IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF COLUMBIA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO.: 1:22-cr-214-RCL |
| | ) | |
| ANTHONY MICHAEL MAZZIO | ) | |

**SENTENCING MEMORANDUM**

**MR. ANTHONY MICHAEL MAZZIO,** by undersigned counsel, provides the following information in support of his sentencing position and request for probation.

Mr. Mazzio is thirty-six years old, the father of three children, the uncle and co-custodian of two additional children, and the partner of Carol Pioppo. He is self-employed and provides for his family through his work as a flooring installer.

Procedural History

Mr. Mazzio was arrested in the Middle District of Alabama on a criminal complaint related to this charge on April 4, 2022. (Doc. 5). He waived his right to a preliminary hearing and was released on an unsecured bond with pretrial supervision, on April 12, 2022. (Docket Minute Entry, Doc. 10). He filed his notice of his intent to change his plea to guilty to an Information, on June 13, 2022. (Doc. 19). He waived indictment on June 17, 2022. (Doc. 23). And he entered his guilty plea pursuant to a written plea agreement on June 24, 2022. (Doc. 26).

Offense Conduct

The facts of this offense are well known to this Court. Mr. Mazzio's part is perhaps similar to others. In early January 2021, Mr. Mazzio drove with his wife Carol Pioppo to Washington, D.C. They visited with his aunt in Virginia. On January 6, Carol dropped him off

1

at the site of the President's speech, while she went shopping.   After the President's speech, Mr. Mazzio joined the crowd walking towards the Capitol.   He entered the Capitol at 2:15 p.m. and walked with the crowd through the building.   He walked in and out of the Speaker's office.   He was briefly interviewed by a British TV reporter.   He left the Capitol at 3:09 p.m.   He and Carol drove home to Alabama, and he went back to work.

Remorse and Acceptance of Responsibility

Mr. Mazzio agrees that his conduct constituted parading, demonstrating, or picketing in the Capitol Building and that he violated 40 U.S.C. § 5104(e)(2)(G).   He regrets his participation in this action. He has agreed to pay $500 in restitution.   He deeply regrets the worry and expense his acts have imposed on his family. He has thought about January 6 a great deal.   He has discussed it with his family and his friends.   He has discussed the offense and the motives behind it with defense counsel.   He has considered how the Capitol police must have felt when they were threatened and overrun.   And he has admitted to everyone with whom he discusses this, that his conduct was wrong. He is prepared to accept the Court's punishment.

History and Background

As described in the Presentence Report, Mr. Mazzio had a pretty rough childhood.   His mother was addicted to drugs, his parents separated, and he and his younger brother ended up in foster care. (Presentence Report, ¶38). At the age of 12, he moved from Massachusetts to live with his father and grandmother in Florida. Between the ages of 15 and 17 years old, he had seven minor juvenile arrests, resulting in home detention, drug court, juvenile diversion and, briefly, juvenile jail (*id*., ¶¶ 22, 23, 27-31).

This may have been due to the chaotic turn his life took at age 16, when he moved in with his mother, who had moved to Florida.   He and his mother did not have a "steady house." They

lived all over the place: house to house, hotel to hotel. His mother was a bit of a "hustler," making money however she could to survive on the streets. She also had a lupus diagnosis, which made it hard for her to be a traditional caretaker.

This did not slow down Mr. Mazzio; while bouncing from home to home with his mother, he began working part-time installing floors. His mother's boyfriend had previously taught him the craft when he was 14 years old, and he figured it wouldn't hurt to make a little money to take care of his needs. He recalls making about $100 weekly, which didn't go far, but made him feel like an adult all the same.

While in high school, Mr. Mazzio met fellow classmate Carol Pioppo, and they began dating. Nearly immediately it felt like they were family – they both came from families with histories of substance use and were eager to create a new and stable life for themselves. In his final year of high school, Mr. Mazzio dropped out to work full time and live with Carol. Anthony raised her child SH.M as his own daughter. He has never been convicted of another offense, until his guilty plea in this case.

Anthony and Carol lived hand-to-mouth when they began their life together. As Carol describes in the sentencing video submitted to this Court, they had a new baby, no transportation, and no home. They took their baby to daycare by bicycle. They changed her on the bus. But they survived and thrived. The 2005 hurricane season, one of the worst on record, destroying homes and buildings throughout the southern part of the state, actually created "endless work" for Anthony and Carol.

The following year, perhaps because repairs were being finalized, the amount of flooring jobs slowed dramatically. Mr. Mazzio needed consistent work and took a job at the Publix grocery store in town. Though he enjoyed working at Publix, his wages were barely enough to

keep their heads above water. Mr. Mazzio heard from a friend that there was a possible job in Dothan, Alabama with Stokes Flooring, where he could make a little more money doing what he knew best.

Mr. Mazzio did not want to leave Carol behind, but he could not let the opportunity pass by either. After weeks of deliberation, he decided to go to Dothan. There, Mr. Mazzio worked as a "helper" installing floors, making about $500 a week. He stayed with family friends and traveled between Florida and Alabama, on and off for six months. Back in Florida, things were getting worse. They had a trailer in a dangerous neighborhood – cars were stolen from them three times.   One was stolen while Carol was in the hospital, and another was stolen for parts by their mechanic, then destroyed and turned into a chicken coop.

On September 2, 2007, Mr. Mazzio rented a U-haul, drove to Florida, and packed up the home they'd known in Florida, to move to Alabama for good. A couple months later, Carol delivered their son, A.M, in Dothan.

For a year, they lived in a trailer park in Dothan. Mr. Mazzio worked to save money and they were able to move into a home right before Christmas 2008. Mr. Mazzio kept working at Stokes Flooring until 2010. But the whole time he was preparing himself to work independently. He bought an old rickety van and bought some old tools.   When his employer refused to increase his pay, Mr. Mazzio left Stokes Flooring to work as an independent floor installer.

Building the work was real hard at first. Mr. Mazzio had trouble finding clients and difficulty convincing potential clients that his work was the same quality as bigger name floor companies. During this time, he had to find supplemental employment to keep the family afloat. He went to Lowe's Hardware for an interview. During his interview, the employers instructed him to "sell" them something.   He pulled a floor adhesive off the shelf and convinced them they

should buy a higher priced one instead of the budget brand, because of the quality of the product. The interviewers were impressed with his flooring knowledge and hired him right away, at $13.60 an hour.

Though Mr. Mazzio really enjoyed his job at Lowe's, the flooring jobs weren't steady and Lowe's barely paid enough to cover the bills. In early 2014, Mr. Mazzio and his wife both lost their jobs.

So in March 2014, they moved to Port St. Lucie, Florida, to be closer to their families. They lived barely thirty minutes away from the beach. They took the kids to the beach frequently.   Every morning after dropping the children off at school, Anthony and Carol would walk to breakfast and have a cup of coffee together. Their family life in Port St. Lucie seemed perfect and full of bliss.   Anthony was making a good living installing floors; they had lots of friends and family nearby; and their family and income finally seemed to be stable.

The bliss did not last long. In June of 2014, a police officer knocked on Mr. Mazzio's door and asked him, "Do you know where your brother is?" Mr. Mazzio was alarmed, as he'd just seen Matthew the night before. His brother had come to visit him in Port St. Lucie. The officer informed Mr. Mazzio that Matthew had been arrested after being involved in a fatal motor vehicle accident. His brother was charged with DUI Vehicular Manslaughter and eventually sentenced to 13 years in prison.

Soon after his brother's arrest, Mr. Mazzio moved his family back to Alabama in order to handle his brother's affairs. In 2016, he was granted full custody of his brother's children, J. M. (now 10) and S. M. (now 8). Mr. Mazzio shares physical custody with the children's maternal grandmother. The children's mother does not have any custodial rights due to her own mental health and substance use issues. J.M. is autistic and was nonverbal when Mr. Mazzio first took

5

custody of them. Now, after occupational and speech therapies, J.M. is verbal and in all mainstream classes in school.

The family grew from two kids to five in less than a year. As though their year had not already been chaotic, Mr. Mazzio's mother revealed that she had breast and skin cancer. At that time, Mr. Mazzio felt like he had developed a very strong connection with his mother, despite the disconnect caused by her past addiction struggles. In February 2016, Mr. Mazzio's mother was placed on hospice care. He visited her one last time, and she passed away shortly after. Today, Mr. Mazzio is able to say that he loved his mother and that he knew she cared for him and his family.

Since 2017, Mr. Mazzio and his family have lived in Midland City, Alabama. They are buying their home from their landlord and they have worked to repair and expand it. Their children attend Dothan City Schools; SH.M. is a junior in high school, A.M. is a freshman in high school, and AR.M. is in kindergarten. Mr. Mazzio works as an independent subcontractor installing floors for Lowe's and deeply enjoys the work he does. The photos contained in the sentencing video show the beautiful work and craft that he brings to his jobs. And as shown by the sentencing video's interviews of his friends, he has a strong relationship with many of his neighbors and often spends time playing ball with the neighborhood children or grilling out with the neighborhood parents.

As Carol says in the sentencing video, they have managed to grow their life from homelessness and bicycle transportation to a four-bedroom house and two cars. They have "things," where previously they had nothing.

But this too is precarious. They had agreed that Carol could quit her part-time job, to attend Wallace Community College and complete her Associates degree. So, their income

dropped a bit. And recently, their son was assaulted and robbed by other teenagers. He suffered a concussion. When the family reported the crime to the police, the assailants started to threaten them, and they had to remove their son from his school, for his own safety.

Anthony Mazzio is fully prepared to receive whatever sentence this Court imposes. But his family may not be. Carol worries that she will be unable to support their five children economically if Anthony is incarcerated. They both worry that they will be unable to keep their children safe if Anthony is away from home.

### Request for Probation

This Court has many options available to it, singly or in combination, to craft an appropriate sentence: community service, home detention, weekends in jail/intermittent incarceration – all as conditions of probation, under the close supervision of a federal probation officer. *See* 18 U.S.C. § 3563(b). Probation with a combination of these conditions is a just and fair sentence. It is not greater than necessary to reflect the seriousness of this offense, but it also will promote respect for the law, provide just punishment, afford continuing deterrence, and protect the public.

Respectfully submitted,

**/s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

7

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

**/s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org