**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 22-cr-214 (RCL)** |
| **v.** | : | |
| | : | |
| **ANTHONY MICHAEL MAZZIO, JR.,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Anthony Michael Mazzio Jr. to 60 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution.

### I.    Introduction

Defendant Anthony Michael Mazzio Jr., 36, self-employed as the sole proprietor of a flooring company, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.7 million dollars in losses.[1]

---

[1] Although the Statement of Offense in this matter, filed on June 24, 2022, (ECF No. 27 at ¶ 6) reflects a sum of more than $1.4 million dollars for repairs, as of April 5, 2022, the current estimate of the approximate losses suffered as a result of the siege at the United States Capitol is $2,734,783.15.  That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Defendant Mazzio pleaded guilty to one count of violating 40 U.S.C. § 5104 (e)(2)(G), Parading, Demonstrating, or Picketing in the Capitol Building. As explained herein, a sentence of 60 days' incarceration is appropriate in this case because Mazzio, (1) despite seeing tear gas and rubber bullets, Mazzio entered the Capitol with body armor, a gas mask, and camouflage fatigues; (2) stayed inside the Capitol for approximately one hour; (3) entered Speaker Nancy Pelosi's office suite, where he banged on one of the doors to an internal room; (4) made statements to a reporter regarding the need to "take a stand" and wanting "these people to be held accountable;" (5) demonstrated a lack of remorse during his post-arrest interview; and (6) after January 6, 2021, joined a group known as "Three Percenters" (a.k.a. "III%ers" or "threepers").[2]

The Court must also consider that Mazzio's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers, breach the Capitol, and disrupt the proceedings. *See United States v. Thomas Fee*, 1:21-cr-00131 (JDB), Tr. 04/01/2022 at 17 ("The defendant was an active participant in a mob assault on our core democratic values and our cherished institution. And that assault was intended by many and by the mob at large in general to interfere with an important democratic processes of this country. I cannot ignore that, cannot pull this misdemeanor out of that context.") (statement of Judge Bates). Mazzio's participation and those of his fellow rioters enabled the

---

[2] Militia violent extremists sometimes self-identify as three percenters ("III%ers" or "threepers") based on the myth that only three percent of American colonists took up arms against the British during the American Revolution. Some III%ers regard the present-day U.S. Government as analogous to British authorities during the Revolution in terms of infringements on civil liberties. While many independent or multi-state militia groups incorporate III% in their unit names, the term is less indicative of membership in a single overarching group than it is representative of a common belief in the notion that a small force (three percent of the population) that is armed and prepared, and with a just cause, can overthrow a perceived tyrannical government. *See* https://www.adl.org/resources/backgrounders/three-percenters (visited September 4, 2022).

breach the Capitol, threatened the lives of the police officers, legislators and their staffs, and disrupted the certification vote for several hours. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, the facts of and circumstances of Mazzio's crime support a sentence of 60 days' incarceration in this case.

As explained herein, a jail sentence is appropriate in this case because (1) Mazzio was prepared for violence, as evidenced by the body armor and gas mask he brought to the U.S. Capitol; (2) he stayed inside the building for nearly one hour; (3) while inside, he penetrated into the sensitive area of Speaker Nancy Pelosi's office and banged on a door; (4) he made statements while inside the building to a news station, about criminal activity and holding people accountable (full quote herein); (5) he did not accept responsibility for his actions during a post-arrest interview; and (6) after January 6, 2021, he joined the Three Percenters.

## II.     Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 27 (Statement of Offense), at 1-12. As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent— contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to Mazzio's conduct and behavior on January 6.

### Defendant Mazzio's Role in the January 6, 2021 Attack on the Capitol

On or about January 6, 2021, Mazzio traveled from Alabama to Washington, D.C. to protest the certification of the electoral votes in the 2020 presidential election. After attending the

"Stop the Steal" rally near the White House, Mazzio made his way to the U.S. Capitol, where he remained approximately one hour.  Based on his camouflage clothing and a gas mask, it appears Mazzio was prepared for violence.  *See* ECF 27 at ¶ 12.

Despite, by his own admission, seeing tear gas and rubber bullets used by police officers against the rioters, Mazzio entered the Capitol within minutes of the breach.   He entered the Capitol through a Senate Wing Door, the first location where the building was breached, as seen in **Images 1** and **2.**



**Image 1**



**Image 2**

Video from itv NEWS, a British television network,[3] depicts reporter Robert Moore, inside the Capitol and interviewing Mazzio. See video **Exhibit 1**, which has been previously provided to the Court.[4] **Image 3** below is a still shot from video **Exhibit 1**, wherein Mazzio addressed a camera crew and stated,

> We all know that they changed the rules mid-game and they are not being held accountable and that's a shame. We are tired of waiting for people that have been promising us Hillary Clinton is gonna go to jail. For over four years now, we know that she did criminal activity by destroying evidence that was subpoenaed. She has not been held accountable and we don't expect these ones to be held accountable either. It's time to take a stand. We're still here right now brother, we didn't expect to get this far. We went through gas grenades, we aren't trying to hurt nobody. We want these people to be held accountable to the laws that we have seen them violate. That's all there is to it.

---

[3] https://en.wikipedia.org/wiki/ITV_News
[4] Mazzio can first be seen on the video at timestamp 2:36 and again at 2:55. Mazzio addressed the camera at timestamp 3:03-3:40.



**Image 3**

While inside the U.S. Capitol, Mazzio entered the sensitive and non-public area of Speaker Pelosi's suite of offices.  Mazzio can be seen in **Images 4** and **5** within the Speaker's suite, which are screenshots from **Exhibits 2**[5] and **3**.  **Exhibits 2** and **3** are videos, which have been provided to the Court, depicting Mazzio banging on a door within Speaker Pelosi's suite of offices and then walking further into the private area.



**Image 4**

---

[5] https://www.newsflare.com/video/402653/mob-incited-by-trump-storms-interior-of-capitol-including-offices-of-mcconnell-and-pelosi-in-terrifying-act



**Image 5**

Mazzio can be seen in **Images 6** and **7**, while he moved through the U.S. Capitol on January 6, 2021.[6]



**Image 6**



**Image 7**

---

[6] InfoWars (TheResistance.video, Banned.video, Just Another Channel /2021-01-06/RAW FOOTAGE Wild Protest in Washington D-C- on January 6th, 2021; Getty Images at timestamp 2:22 https://www.gettyimages.com/detail/video/pro-trump-protesters-storm-us-capitol-building-usa-news-footage/1295077075

Mazzio exited the U.S. Capitol on the East side, as shown in **Image 8**.[7]



**Image 8**

[7] https://www.dropbox.com/s/lu62o2wbtqrkm9j/5636b4a9-6fd6-428f-b582-ab447c47c36b.mkv?dl=0 at timestamp 0:40.

Mazzio can be seen on the East side plaza area of the U.S. Capitol, wearing camouflage, body armor, and carrying a gas mask, in **Image 9**.



**Image 9**[8]

*Mazzio's Post-Arrest Interview with the FBI*

On or about April 4, 2022, Mazzio participated in a voluntary post-arrest interview with the Federal Bureau of Investigation  ("FBI").  During the interview, Mazzio admitted traveling to Washington because he felt the election was stolen, and he wanted his voice to be heard.   Mazzio acknowledged that he had followed the election, knew the certification process was being held on

---

[8] https://www.facebook.com/photo.php?fbid=10223665969494411&set=pb.1147153209.-2207520000..&type=3

January 6, and believed it was a fraudulent process.  Mazzio disclosed he went into the building

because the people who needed to hear his voice were inside the Capitol, and they would not hear

his protests if he stayed outside.  Mazzio claimed that police waved people into the building, but

he also admitted that he went past tear gas, barricades, and rubber bullets; in fact, Mazzio stated

he put his gas mask on because of the tear gas.  Mazzio assured the FBI that he did not assault any

police officers but declined to tell them if he witnesses anyone else engaged in assaultive conduct.

Mazzio admitted that he entered Speaker Nancy Pelosi's office suite.  Mazzio expressed no

remorse during the interview, seemingly because he remained committed to the notion that the

2020 election had been fraudulent.  Mazzio admitted that after January 6, 2021, he joined "a group"

but declined to identify the group.  Through investigation, the FBI was able to verify Mazzio joined

the Three Percenters after January 6, 2021.

*The Charges and Plea Agreement*

On March 22, 2022, the United States charged Mazzio by criminal complaint with violating

18 U.S.C. 1752(a) and (b) and 40 U.S.C. 5104 (e)(2)(D) and (G).  On April 4, 2022, law

enforcement officers arrested him in Alabama.  On June 13, 2022, the United States charged

Mazzio by a one-count Information with violating 40 U.S.C. 5104(e)(2)(G). On June 24, 2022,

pursuant to a plea agreement, Mazzio pleaded guilty to the Information, charging him with a

violation of Parading, Demonstrating, or Picketing in the Capitol Building. By plea agreement,

Mazzio agreed to pay $500 in restitution to the Department of the Treasury.

## III.    Statutory Penalties

Mazzio now faces a sentencing on a single count of violating 40 U.S.C. § 5104 (e)(2)(G).

As noted by the plea agreement and the U.S. Probation Office, Mazzio faces up to six months of

imprisonment and a fine of up to $5,000. Mazzio must also pay restitution under the terms of his

plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6).  In this case, as described below, the Section 3553(a) factors weigh in favor of 60 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 was a crime unparalleled in American history and defies comparison to other violent riots.  It represented a grave threat to our democratic norms and practices. Indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants.

While each defendant must be sentenced based on their own conduct, this Court should take into account that each person who entered the Capitol on January 6 without authorization did so under extreme circumstances. As they entered the Capitol, they very likely crossed through numerous barriers and barricades and heard the violent outcries of a mob. Depending on the timing

and location of their approach, they also may have observed extensive fighting between the rioters and police and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while assessing Mazzio's individual conduct and fashioning a just sentence, this Court should look to a number of critical aggravating and mitigating factors, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) defendant's reaction to acts of violence or destruction; (5) whether, during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from police officers; and (9) whether the defendant demonstrated  sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment. Had Mazzio personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of Mazzio is therefore not a mitigating factor in this misdemeanor case.

Mazzio traveled from Alabama to Washington, D.C. to protest the certification of the electoral votes in the 2020 presidential election.  After his attendance at the "Stop the Steal" rally, he went to the U.S. Capitol.  It appears Mazzio was prepared for violence, based on his camouflage clothing, body armor, and a gas mask.  Within minutes of the breach of the Capitol, Mazzio entered the building through a Senate Wing Door through the first location the building was breached.  The Senate Wing Door is not a public entrance – it is an emergency fire exit, where an alarm sounded due to the breach.  From inside the Capitol, Mazzio gave an interview to a television station in

which he voiced his displeasure with the election and certification, and his perceived need to take a stand.

Mazzio's statements after January 6 show a willful blindness to the fact that his entry into the Capitol on January 6 was wrong.  When he was interviewed by the FBI, Mazzio stated that  he believed his actions were justified because the election had been stolen and he wanted his voice to be heard by the people inside.  He stated that he thought he had a right to be in a federal building and that police officers waved him in.  This, of course, is belied by his own statements acknowledging the presence of the barricades and the police officers' use of tear gas, and rubber bullets against the rioters.  In fact, Mazzio stated he put his gas mask on because of the tear gas. After January 6, 2021, Mazzio joined the Three Percenters group, further cementing his opposition to the results of the 2020 election.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of  incarceration in this matter.

### B.  The History and Characteristics of Mazzio

As set forth in the PSR, Mazzio's criminal history consists of no adult convictions, but some law enforcement encounters as a juvenile.  ECF 28 ¶¶ 26-31.  Mazzio is self-employed, and he has been compliant with his conditions of pre-trial release.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the

democratic process."[9] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic

---

[9] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge

Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [[Defendant Last Name]] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven

months ago for the United States and our diplomats to convince other nations to pursue democracy.

It means that it will be harder for all of us to convince our children and our grandchildren that

democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. *See United States*

*v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be

made defending what happened in the Capitol on January 6th as the exercise of First Amendment

rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—

especially those who intend to improperly influence the democratic process—that their actions

will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Due to Mazzio's lack of remorse and his association with the Three Percenters group after

January 6, 2021, illustrate the need for specific deterrence in this case.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles

in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as

in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[10] This Court must sentence Mazzio based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot. Although those like Mazzio convicted of misdemeanors are generally less culpable than defendants convicted of felonies, misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes. A probationary sentence should not be the default.[11] *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of this Court). Accord, *United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 (statement of Judge Friedman).

Mazzio has pleaded guilty to the One Count Information, charging him with Parading, Demonstrating, or Picketing in the Capitol Building, in violation of 40 U.S.C. § 5104 (e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need

---

[10] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[11] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. Avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id.* ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). Because the Sentencing Guidelines do not apply here, the sentencing court cannot readily conduct a disparity analysis against a nationwide sample of cases captured by the Sentencing Guidelines.

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against police officers, and large number of victims. Thus, even though many of defendants were not charged as

18

conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case. In particular, other judges of this court have sentenced Capitol breach defendants who spent time in other sensitive places within the Capitol.

A defendant's entry into a sensitive space, such as Speaker Pelosi's office suite, places that defendant in a more serious category of offenders than those who remained in the public spaces of the Capitol, such as the Rotunda. Many of the Congressional staffers who were sheltering in their offices during the riot were severely traumatized by the event. https://www.washingtonpost.com/education/hill-staffers-school-shooting-drills/2021/01/14/3fe783d0-55e7-11eb-a931-5b162d0d033d_story.html; https://www.cbsnews.com/sanfrancisco/news/video-jan-6-rioters-searched-for-speaker-pelosi-after-her-evacuation-from-capitol/. A defendant who entered a sensitive space took an extra step to occupy the Capitol and displace Congress and to display the dominance of the mob over the will of the people.

One of the most famous photographs from January 6 is that of a rioter in Speaker Pelosi's office, with his feet on her desk. *See* Amended Complaint, *United States v. Richard Barnett,* 21-cr-38, ECF 3 ¶ 2. That photograph has become notorious likely for exactly this reason, because of what invading the office of a member of Congress represents: a show of intimidation, an attempted display of power, above and beyond entering the building.

In *United States v. Derek Jancart and Erik Rau*, 21-cr-148 (JEB) and 21-cr-467 (JEB), the defendants pled guilty to misdemeanor charges of 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct

in the Capitol building) in connection with penetrating the Capitol building all the way to the Speaker's Conference Room. Judge Boasberg sentenced each of the defendants to 45 days of incarceration.

Like Jancart and Rau, Andrew Ericson also went to the Speaker's Conference Room. *United States v. Andrew Ericson,* 21-cr-506 (TNM).  The government recommended 60 days' jail time, and Judge McFadden imposed a sentence of 20 days' imprisonment, discussing the defendant's entry into an office as follows: "That's a private area and your violation of that space suggests a certain brazenness and intentionality that requires consideration in your sentence. You could have caused a very dangerous and fearful scene had the speaker or her staff been present in the office when you and others entered it." *Ericson,* Tr. 12/10/21 at 21. Judge McFadden concluded that entering offices put Ericson in a "different category" than people "who were only in areas that would normally be open for tours." *Id.*

Likewise, in *United States v. Eric Barber*, 21-cr-228 (CRC), the defendant entered the hallway of the suite of offices assigned to Speaker Pelosi.  The government sought a sentence of 120 days' incarceration, the Court imposed a sentence of 45 days.  It should be noted that Barber pled guilty to violations of both 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in the Capitol Building) and 22 D.C. Code § 3212 (Theft II); entered the Capitol through a broken window; and had a prior criminal conviction for breaking and entering.  His conduct was somewhat more aggravating than Mazzio's.

In *United States v. Matthew Mazzocco*, 21-cr-54 (TSC), the defendant pled guilty to a misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in the Capitol Building) in connection with spending time inside the Spouse's Lounge of the Capitol, and Judge Chutkan sentenced the defendant to 45 days of incarceration. While inside the Spouse's

Lounge, Mazzocco warned others not to take or destroy anything and said that they were probably going to get in trouble for what they were doing. Gov. Sentencing Mem., *Mazzocco*, 21-cr-54, ECF 28 at 6.

Another defendant who entered Senator Jeff Merkley's office, Charles Pham, received a sentence of 45 days' imprisonment. *United States v. Charles Pham,* No. 21-cr-109 (TJK).

The government acknowledges that Felipe Marquez, who entered Senator Merkley's office, received a sentence of three months' home detention; the government had recommended four months' incarceration. *United States v. Marquez,* 21-cr-136 (RC).  Judge Contreras, however, explained that Marquez's documented mental-health issues had a "significant influence" on his sentence, and believed that probation would best allow Marquez to receive mental-health treatment. *Marquez,* Tr. 12/10/21 at 32, 34, 37. One other defendant who entered Senator Merkley's office also received a probationary sentence, but he was a 68-year-old retiree with no criminal record who was there for less than a minute, and there was no evidence that he engaged in any flagrant conduct while there. *See United States v. Edwards,* 21-cr-366 (JEB).

This Court imposed a sentence of 60 days' incarceration and 36 months' probation in *United States v. James Little*, 21-cr-315.  As this Court stated in its Memorandum Opinion, defendants who did not directly assault officers were an essential component to the harm. Law-enforcement officers were overwhelmed by the sheer swath of criminality.  *See* ECF 43.

 In *United States v. Pamela Hemphill*, 21-cr-555, this Court sentenced the defendant to 60 days' incarceration and 36 months' probation, for violating 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in the Capitol Building).   Hemphill entered the Capitol, downplayed her role during her post-arrest interview, and had previously entered the Idaho Statehouse in August 2020.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     The Court's Lawful Authority to Impose a Split Sentence

As this Court has concluded and explained, a sentencing court may impose a "split sentence"—"a period of incarceration followed by period of probation," *Foster v. Wainwright*, 820 F. Supp. 2d 36, 37 n.2 (D.D.C. 2011) (citation omitted)—for a defendant convicted of a federal petty offense. *See* 18 U.S.C. § 3561(a)(3). *United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that " a split sentence is permissible under law and warranted by the circumstances of this case), *appeal pending*, District of Columbia Circuit No. 22-3018; see also *United States v. Sarko*, No. 21CR591 (CKK), 2022 WL 1288435, at *1 (D.D.C. Apr. 29, 2022) (explaining why a split sentence is permissible in a petty offense case); *United States v. Caplinger*, No. CR 21-0342 (PLF), 2022 WL 2045373, at *1 (D.D.C. June 7, 2022) ("the Court concludes that a split sentence is permissible for a petty offense and therefore is an option for the Court in Mr. Caplinger's case."); *United States v. Smith*, 21-cr-290 (RBW), ECF

22

43 (D.D.C. Mar. 15, 2022) (imposing split sentence); *United States v. Meteer*, 21-cr-630 (CJN), ECF 37 (D.D.C. April 22, 2022) (imposing split sentence); *United States v. Entrekin*, 21-cr-686 (FYP), ECF 34 (D.D.C. May 6, 2022) (imposing split sentence); *United States v. Revlett*, 21-cr-281 (JEB), ECF 46 (D.D.C. July 7, 2022) (imposing split sentence); *United States v. Getsinger*, 21-cr-607 (EGS), ECF 60 (D.D.C. July 12, 2022) (imposing split sentences); *United States v. Ticas*, 21-cr-00601 (JDB), ECF 40 (D.D.C. July 15, 2022); *United States v. Caplinger*, 21-cr-00342 (PLF), ECF 74 (D.D.C. August 1, 2022).[12]

## VI.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 60 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     s/ *Jacqueline Schesnol*
Assistant United States Attorney
JACQUELINE SCHESNOL

---

[12] In *United States v. Lindsey*, 21-cr-162 (BAH), ECF 102, the defendant pleaded guilty to three counts: 18 U.S.C. § 1752(a)(1); 40 U.S.C. §§  5104(e)(2)(D) and 5104(e)(2)(G). Chief Judge Howell sentenced Lindsey to five months incarceration on each of the § 5104 counts, to be served concurrently, and 36 months' probation on the § 1752(a)(1) count.

## <u>CERTIFICATE OF SERVICE</u>

On this 15th day of September 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

<u>/s/ *Jacqueline Schesnol*</u>
Assistant United States Attorney
JACQUELINE SCHESNOL